J-S47018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEFFREY MCCULLON AND MARIA MCCULLON, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ERIC PICCOTTI AND MARGARET PICCOTTI, HUSBAND AND WIFE, INDIVIDUALLY AND, T/D/B/A JILLY'S; BERNADETTE PICCOTTI; AND, EBD, INC. | |
| Appellee | No. 2186 MDA 2014 |

Appeal from the Order Entered November 18, 2014
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 14-CV-2656

BEFORE:  ALLEN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 04, 2015**

Jeffrey McCullon and Maria McCullon ("the McCullons"), husband and wife, appeal the order entered November 18, 2014, in the Lackawanna County Court of Common Pleas sustaining the preliminary objections of Eric Piccotti and Margaret Piccotti, husband and wife, individually and, T/D/B/A Jilly's, Bernadette Piccotti, and EBD, Inc. (collectively "the Piccottis"), to the McCullons' complaint, and dismissing the complaint with prejudice.  The McCullons sought damages for breach of contract and unjust enrichment after they failed to purchase a bar owned by the Piccottis.  On appeal, the

_____

[*] Retired Senior Judge assigned to the Superior Court.

McCullons argue the trial court erred and abused its discretion in considering information and documents outside the complaint, and in dismissing their claim for unjust enrichment. Based on the following, we affirm.

The facts underlying the McCullons' claims are aptly summarized by the trial court as follows:

> According to the Complaint filed on May 5, 2014, Defendant Eric and Margaret Piccotti owned a tavern/restaurant formerly known as Jilly's and later known as McCullon's Bar and Grill.[1] Defendants, Eric Piccotti, Bernadette Piccotti, and EDB, Inc., owned the liquor license attached to the subject property. Plaintiff Maria McCullon ("McCullon") was allegedly listed on the liquor license as the Manager of the premises.
>
> _____
>
> [1] It was represented at oral argument that the property at issue has been sold to a third party.
>
> _____
>
> [The McCullons], allege that they entered into an agreement in November of 2013 with [the Piccottis], in which [the McCullons] would operate the subject bar, would invest cash and time into the business, and would, at a future unspecified date, purchase the property from [the Piccottis]. [The McCullons] allege that they then made numerous improvements to the property with the understanding that [the Piccottis] would not actively seek another buyer since they had allegedly expended over $100,000 into improving the property. [The McCullons] also allege that this agreement was memorialized in a "Sales Agreement," which is attached as Exhibit A to the Complaint. The "Sales Agreement" is a hand-written restaurant slip/Guest Check and lays out various potential payment amounts and/or durations, starting with a price of $299,000 for cash or conventional financing. The pricing options then increase in the following increments:
>
> - $330,000 total—$100,000 down and $230,000 over 10 years at 5% interest ($2,975/month);

- $360,000 total—$50,000 down and $290,000 over 10 years at 6% interest ($3,280/month);

- $390,000 total—$25,000 down and $365,000 over 10 years at 7% interest ($5,150/month).

Then, on or about March of 2014, [] Eric Piccotti allegedly informed [] Maria McCullon that there was a deadline of May 1, 2014 for [the McCullons] to purchase the property from [the Piccottis]. In anticipation of purchasing the property, [the McCullons] state that they had made an application to Peoples Security Bank & Trust to seek financing. On April 4, 2014, [the McCullons] entered into an "Agreement of Sale" with [the Piccottis] for the subject property in the amount of $279,000. [The Agreement is attached to the Complaint as Exhibit B.] This Agreement included a "time is of the essence" clause and was contingent upon the closing occurring on or before May 1, 2014. A footnote was included in the "Agreement of Sale," stating as follows:

It is understood that the closing date may be extended an additional thirty days for good cause. However, this Agreement is expressly contingent upon Buyers providing Seller with written verification from the financial institution providing the mortgage of a firm commitment that Buyers' application for a mortgage has been approved.

On April 30, 2014, [the McCullons] caused a letter to be sent to [the Piccottis] from Peoples Security Bank & Trust. [The letter is attached to the Complaint as Exhibit C.] The letter stated as follows:

To Whom it May Concern:

Maria McCullon has an application in for financing at Peoples Security Bank & Trust Co.

The sale of the subject property between the parties never materialized.

Trial Court Memorandum and Order, 11/18/2014, at 1-3 (record citations omitted).

On May 5, 2014, the McCullons filed the instant complaint stating causes of action for breach of contract and unjust enrichment, and seeking to prohibit the sale of the property to a third party. Thereafter, on July 15, 2014, the Piccottis filed preliminary objections in the nature of a demurrer. Following oral argument and briefs submitted by both parties, the trial court entered a Memorandum and Order on November 18, 2014, sustaining the Piccottis' preliminary objections and dismissing the complaint with prejudice. This timely appeal followed.[1]

Our review of an order sustaining preliminary objections in the nature of a *demurrer* is well-established.

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. ***Cardenas v. Schober,*** 783 A.2d 317, 321 (Pa.Super.2001) (citing Pa.R.C.P. 1028(a)(4)). "**Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer.**" ***Id.*** at 321-22 (citation omitted). All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true. ***Id.*** at 321.
>
> > In determining whether the trial court properly sustained preliminary objections, **the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto**, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency

_____

[1] The trial court did not direct the McCullons to file a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(b).

of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

> *Brosovic v. Nationwide Mutual Insurance Co.,* 841 A.2d 1071, 1073 (Pa.Super.2004) (citation omitted).

*Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805-806 (Pa. Super. 2007) (emphasis added).

On appeal, the McCullons challenge only the trial court's dismissal of their cause of action for unjust enrichment.[2] They first assert the court improperly considered a document, the Commercial Lease Agreement ("Commercial Lease"), outside its scope of review in sustaining the Piccottis' preliminary objections. A review of the record reveals the Commercial Lease, relied upon by the trial court in its memorandum opinion, was not attached to the Complaint, but rather was included as an attachment to the Piccottis' Memorandum of Law in support of their preliminary objections.

---

[2] With respect to the breach of contract claim, the trial court concluded: (1) the statute of frauds requires that a transfer of property be evidenced in a writing; (2) the "Sales Agreement/Guest Check" attached to the complaint did not constitute "an agreement between the parties[;]" and (3) the McCullons did not aver that the Piccottis breached any duty owed to them in the April 2014 Agreement of Sale. *See* Trial Court Memorandum and Order, 11/18/2014, at 5-7. On appeal, the McCullons' argument focuses solely on their claim for unjust enrichment. Therefore, we find any challenge to the court's dismissal of their breach of contract claim waived.

Because a court's scope of review in ruling on a demurrer is limited to the complaint, the McCullons argue the court erred as a matter of law "[b]y exercising consideration of matters beyond [the] Complaint." McCullons' Brief at 14.

The McCullons also contend the court erred in concluding they were entitled to no relief on their claim of unjust enrichment as a matter of law. They assert that, "[h]ad the trial court resigned itself to [an] evaluation of the allegations in the Complaint, as it was required to do by law, the record supported a finding that [they] possessed an agreement or an expectation of an opportunity to purchase the subject property, which caused them to make extensive improvements, where they operated McCullon's Bar and Grill." McCullons' Brief at 15. The McCullons also argue, however, that even if the trial court were permitted to consider the terms of the Lease, a "factual dispute exists on what occurred, what the expectations of the [McCullons] actually were and whether the [Piccottis] were unjustly enriched." *Id.* at 19. Accordingly, the McCullons claim the trial court erred when it sustained the Piccottis' preliminary objections to their claim of unjust enrichment and dismissed their complaint with prejudice.

In sustaining the Piccottis' demurrer to the claim for unjust enrichment, the court, preliminarily, reiterated its finding that the November 2013 "Sales Agreement/Guest Check" did not constitute an "enforceable contract between the parties for the sale of the business premises." Trial Court Memorandum and Order, 11/18/2014, at 8-9. As further support, the

trial court referenced Paragraph 25 of the parties' Lease, which included "language contemplat[ing] the possibility that the subject premises could be sold to a third party during the term of [the McCullons'] lease[.]" *Id.* at 9. The court explained: "Given this information, [the McCullons'] allegations that they expended money into the property in anticipation of purchasing it is unsupported by the facts." *Id.*

The trial court also concluded the McCullons' did not demonstrate, through their pleadings, that "any benefits conferred to [the Piccottis] have been *unjust*." Trial Court Memorandum and Order, 11/18/2014, at 7-8 (emphasis in original). The court provided the following rationale:

> First, the Commercial Lease requires that [the McCullons] make repairs to the property. Paragraph 9 of the Commercial Lease states that "The Lessee agrees to keep the premises in a good condition of repair." Second, though [the McCullons] do allege that they made repairs and/or improvement to the property, they were also leasing the space for the purpose of operating a business within that space. Repairs are necessary in maintaining a successful business and, presumably, [the McCullons'] business would have benefitted from the repairs and/or improvements that they allegedly made. Furthermore, there is nothing in the [Commercial Lease] to suggest that [the McCullons] would be compensated or reimbursed for any repairs and/or improvements that they made to the property. [The McCullons] made repairs and/or improvements for the benefit of their business, undertaking them knowing that the lease could end and the property could be sold to a third party.

*Id.* at 9. Therefore, the trial court concluded the McCullons' pleadings did not support a cause of action for unjust enrichment.

First, we agree with the McCullons that the trial court erred when it considered the term of the parties' Commercial Lease. As noted *supra*,

when ruling on preliminary objections in the nature of a demurrer, a trial court must "resolve the issues solely on the basis of the pleadings; **no testimony or other evidence outside of the complaint may be considered** to dispose of the legal issues presented by the demurrer." *Hess*, *supra*, 925 A.2d at 806 (citation omitted and emphasis added). *See also Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. 1994) (finding trial court erred in considering "factual matters beyond the complaint" when ruling upon preliminary objection in nature of a demurrer).

Here, only three exhibits were attached to the complaint: (1) the undated "Sales Agreement/Guest Check;" (2) the April 4, 2014, Agreement of Sale; and (3) the April 30, 2014, letter from Peoples Security Bank, stating Maria McCullon had applied for financing. *See* Complaint, 5/5/2014. The parties' Commercial Lease is not mentioned in the Complaint, nor was it attached as an exhibit. Accordingly, we conclude the trial court erred in considering the Commercial Lease when determining whether the McCullons sufficiently pled a cause of action for unjust enrichment.

Nevertheless, we still find the McCullons are entitled to no relief, as we agree with the trial court's ultimate determination that the McCullons cannot maintain an action for unjust enrichment against the Piccottis as a matter of law. We do so, however, on a different basis than that relied upon by the trial court. *See Richmond v. McHale*, 35 A.3d 779, 786 (Pa. Super. 2012) ("[W]e are not bound by the rationale of the trial court and may affirm on any basis.").

When considering whether a plaintiff has stated a claim for unjust enrichment, we must bear in mind the following:

A claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.

The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

**Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust.* The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.**

***Stoeckinger v. Presidential Fin. Corp. of Delaware Valley***, 948 A.2d 828, 833 (Pa. Super. 2008) (citations and internal punctuation omitted; emphasis added).

The McCullons include the following factual averments in their complaint:

8. On or about November 2013, [the McCullons] and [the Piccottis] entered into an agreement in that [the McCullons] would be operating the bar formerly known as JILLY'S now known as McCULLON's BAR AND GRILL, and entered into a tentative sales agreement in November of 2013 wherein the

- 9 -

[McCullons] would invest cash and time into the business and then, at a future date, which was not formally produced in the Sales Agreement … the price to be paid was Two Hundred Ninety-nine Thousand ($299,000.00) Dollars cash or conventional …

9. Since the entry of the Agreement, [the McCullons] have made improvements to the premises …

10. In making these improvements, [the McCullons] did so with the understanding that the [Piccottis] would not actively seek another buyer as they had expended in excess of One Hundred Thousand ($100,000.00) Dollars in improving the premises and building the business known as McCULLON'S BAR AND GRILL.

11. On or about March of 2014, Plaintiff, MARIA McCULLON, was approached by the Defendant, ERIC PICCOTTI, and he instructed her that he was now putting a deadline of May 1, 2014 in which the closing would occur.

12. [The McCullons] were always under the understanding that they would be given the right of first refusal in purchasing the property as they had expended vast amounts of money that the [Piccottis] knew they were doing in anticipation of purchasing the business.

13. Sometime in March or April of 2014, the [McCullons] found out that the [Piccottis were] actively seeking buyers for the premises and liquor license after [Maria McCullon] had expended various amounts of money and the property was being listed by a real estate company to pursue a purchaser for the property.

14. [The McCullons], in anticipation of purchasing the property, had made application to Peoples Security Bank & Trust to try to seek financing for [their] loan to purchase the premises, contents and liquor license …

15. Plaintiff, MARIA McCULLON, has been the operating manager of the premises and business known as McCULLON'S BAR AND GRILL since November of 2013 and is listed on the liquor license as the running manager of the tavern.

16. [The McCullons] are seeking to purchase the premises from the [Piccottis] and prevent them from selling it to anyone else as [they have] expended various and diverse sums of money and personal time in endeavoring to purchase the business and the

premises located at 524 Court Street, Scranton, Pennsylvania, now operating as McCULLON's BAR AND GRILL.

17. It is believed and therefore averred that the [Piccottis] have now entered into an active contract with an alternative purchaser for the business and is not allowing [the McCullons] to purchase the bar and grill after they have expended various and diverse sums of money and has operated in good faith trying to secure financing and the [Piccottis] did agree in a contract, which is attached hereto and marked as Exhibit "B", that the contract could be extended beyond May 1st for a period of thirty (30) days for good cause shown.

18. The [McCullons] have operated as reasonable as possible in trying to secure financing, per the letter attached hereto and marked as Exhibit "C", showing their good faith application to a financing company to purchase the premises.

* * * *

22. [The McCullons] have expended various and diverse sums of money to the [Piccottis'] benefit and [the Piccottis] are now preventing the [McCullons] from purchasing the property.

Complaint, 5/5/2014, at ¶¶ 8-18, 22.

Based on these factual averments, we agree with the conclusion of the trial court the McCullons failed to demonstrate that any benefit the Piccottis received from the improvements the McCullons made to the property was "unjust." The McCullons averred they made improvements to the property after entering into a "tentative agreement" to purchase the property "at a future date," and with the "understanding that they would be given the right of first refusal in purchasing the property." *Id.* at ¶¶ 8, 12. While not specifically averred, it is clear the McCullons **were given the opportunity** to purchase the property, as they attached to the complaint an agreement of sale executed by the parties on April 4, 2014. *See id.* at Exhibit B.

- 11 -

However, as is also evident from the attachments, the Agreement of Sale included a "time is of the essence" clause mandating closing occur on or before May 1, 2014. *See id.* at Exhibit B, Agreement of Sale, 4/4/2014, at ¶ 3. Although the Agreement permitted a thirty-day extension of the closing date "for good cause," it also made the contract contingent upon the McCullons providing written verification that they had secured financing for the sale. *See id.* at ¶ 3 n.1. Clearly, McCullons were not able to secure the requisite financing in the allotted time as is evident by the Peoples Security Bank's April 30, 2014, letter, attached as Exhibit C, stating that the McCullons had "an application for financing." *Id.* at Exhibit C.

Accordingly, accepting all well-pleaded facts as true, we find the McCullons are unable to state a claim for unjust enrichment. Indeed, the McCullons averred they made improvements to the property with the **expectation** that they would be provided the first opportunity to purchase the bar. Moreover, the attachments to the complaint demonstrate they were provided with that right, but were unable to secure the requisite financing in the time allotted under the agreement of sale. While the McCullons claim the Piccottis are "preventing [them] from purchasing the property[,]"[3] the McCullons have pled no facts to support that assertion. Rather, the complaint and attachments clearly demonstrate the Agreement of Sale fell

---

[3] Complaint, 5/5/2014, at ¶ 22.

through because of the McCullons' own failure to secure financing. Therefore, we detect no error or abuse of discretion in the ruling of the trial court sustaining the Piccottis' preliminary objections and dismissing the McCullons' complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015